UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANNIE SONG, <br><br>                      Plaintiff, <br><br>   v. <br><br>COSTCO WHOLESALE CORPORATION, <br><br>                      Defendant. | CASE NO. 2:24-cv-00845-LK <br><br>ORDER TO SHOW CAUSE |

This matter comes before the Court sua sponte. For the following reasons, the Court orders Plaintiff Annie Song to show cause why the Court should not dismiss this action for lack of subject-matter jurisdiction.

**I.    BACKGROUND**

Defendant Costco Wholesale Corporation is a Washington corporation whose principal place of business is Issaquah, Washington. Dkt. No. 13 at 3; *see also* Dkt. No. 6 at 1. It sells products to its members in warehouses (including warehouses in Washington and Connecticut) and online through both its website, Costco.com, and its mobile application. Dkt. No. 13 at 1–3.

ORDER TO SHOW CAUSE - 1

Plaintiff Annie Song is a citizen and resident of Connecticut who "at all relevant times held a Costco membership and made purchases from her local Costco warehouse" in Norwalk, Connecticut, as well as "online at Costco.com." *Id.* at 3.

Song alleges that "[w]hen a consumer uses Costco's website or mobile application to buy non-perishable groceries, Costco promises to provide free 2-day delivery on all qualifying orders totaling $75 or more." *Id.* at 3–4. "On all qualifying orders totaling less than $75, Costco promises to provide flat-rate delivery for $3 per unit." *Id.* at 4. These representations are purportedly made "throughout the purchasing process, including while shopping in a banner at the top of the Costco Grocery page, and on the check-out page." *Id.* If the $75 minimum purchase amount is met, Costco purportedly "informs customers both on the banner while shopping and during check-out" that their "delivery fee is now waived" and the "2-Day Delivery Fee" will display "$0.00." *Id.* Costco also purportedly stated on its website at the relevant time that online prices and warehouse prices are different because of associated delivery fees. *Id.* at 4. Specifically, Costco stated:

**Are warehouse and online prices the same?**

> As you may already know, not all products sold on Costco.com are available at your local Costco warehouse. Also, products sold online may have different pricing than the same products sold at your local Costco warehouse. That's due to the shipping and handling fees charged for delivery to your home or business. And when an item is available both online and in the warehouse, you'll see the message, "Item may be available in your local warehouse for a lower, non-delivered price," on its product page on Costco.com.

*Id.*

On January 21, 2024, Song placed an order for two-day delivery on Costco.com for various non-perishable items totaling over $75. *Id.* at 5. Her order included a 30-roll count of Charmin Ultra Soft Bath Tissue for $33.49. *Id.* at 6. When she went to check-out, the website showed her the following, indicating that she would be paying $0.00 for "Shipping & Handling" and the "2-Day Delivery Fee":

ORDER TO SHOW CAUSE - 2

|  |  |
|---|---:|
| Subtotal | $ 153.13 |
| Discount on Order | $ 14.50 |
| Shipping & Handling | $ 0.00 |
| 2-Day Delivery Fee | $ 0.00 |
| Estimated Tax | $ 6.89 |
| Total | $ 145.52 |

*Id.* Song represents that "[n]one of the products [she] purchased in her order included [a] disclosure that any of the items might be available at her Costco store at a lower price." *Id.* at 5. However, she asserts that "the exact same 30-Roll Count of Charmin Ultra Soft Bath Tissue that [she] purchased online cost only $29.99 at the Costco warehouse located at 779 Connecticut Ave, Norwalk, CT 06854." *Id.* at 6. Song therefore claims that, but for her "reli[ance] on Costco's misrepresentations and omissions as to the cost of delivery," she "would not have made the online purchase," and if she had known "the true price of the toilet paper sold at her Costco warehouse" and "that she was not receiving free delivery," she "would have purchased the toilet paper in-store instead of purchasing it online or would have purchased toilet paper elsewhere." *Id.* at 7.

On June 12, 2024, Song filed suit against Costco, alleging violations of Washington's Consumer Protection Act ("CPA") on behalf of herself and a nationwide class of consumers. Dkt. No. 1 at 7–8.[1] She also alleged as an alternative claim a violation of the Connecticut Unfair Trade

---

[1] Both the original complaint and the first amended complaint define the "Nationwide Class" as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, made a purchase for delivery through the Costco mobile app or website and paid more for a product than was charged by Costco for the same product in-store when the online product page did not contain a disclosure warning consumers that the item may be available in-store for a lower price.

ORDER TO SHOW CAUSE - 3

Practices Act ("CUTPA") on behalf of herself and a subclass of Connecticut consumers. Dkt. No. 1 at 8–10.[2] Song filed an amended complaint on August 29, 2024, which alleged the same violations of the CPA and CUTPA. Dkt. No. 13 at 10–13.

On September 26, 2024, Costco filed a motion to dismiss Song's first amended complaint. Dkt. No. 15. Song filed her opposition to Costco's motion to dismiss on October 28, 2024. Dkt. No. 21.

## II.  DISCUSSION

Before the Court rules on Costco's motion to dismiss, it must first confirm its jurisdiction. Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This determination is an "inflexible" threshold requirement that must be made "without exception, for jurisdiction is power to declare the law and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) (cleaned up). As the party asserting jurisdiction, Song has the burden of establishing it. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Under the Class Action Fairness Act ("CAFA"), federal district courts have original jurisdiction over a proposed class action when the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there is minimal diversity between the parties. 28 U.S.C.

---

*Id.* at 5; Dkt. No. 13 at 7.

[2] Both the original complaint and the first amended complaint define the "Connecticut Class" as:

> All consumers who, while residing in the State of Connecticut, within the applicable statute of limitations preceding the filing of this action to the date of class certification, made a purchase for delivery through the Costco mobile app or website and paid more for a product than was charged by Costco for the same product in-store when the online product page did not contain a disclosure warning consumers that the item may be available in-store for a lower price.

*Id.* at 5; Dkt. No. 13 at 7.

§ 1332(d)(2); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006). Minimal diversity, as applicable here, means that at least one member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A). Song avers that this Court has CAFA jurisdiction over Song's claims pursuant to 28 U.S.C. § 1332(d) "because this is a class action with diversity between at least one class member (including [Song]) and [Costco] and the aggregate amount of damages exceeds $5,000,000." Dkt. No. 13 at 3. Costco has not disputed Song's allegations of minimal diversity or amount in controversy.

There is no question about the parties' diversity for the purposes of CAFA, as Song is a citizen of Connecticut and Costco is a Washington corporation with its principal place of business located in Issaquah, Washington. Dkt. No. 13 at 3; Dkt. No. 6 at 1; *see also* 28 U.S.C. § 1332(d)(2)(A). However, Song's complaint does not adequately plead the $5,000,000 amount in controversy required to trigger this Court's limited jurisdiction. The amount in controversy is the "amount at stake in the underlying litigation" and "includes any result of the litigation, excluding interests and costs, that entails a payment by the defendant," such as "damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016) (cleaned up). Whether the amount in controversy requirement is met is generally "determined from the face of the pleadings," and courts will defer to the amount "claimed by the plaintiff . . . so long as the claim is made in good faith." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). A plaintiff still bears the burden of alleging "with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged, or if inquiry be made by the court of its own motion, to support the allegation." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 287 n.10 (1938); *see also Jeff Tracy, Inc. v. U.S. Spec. Ins. Co.*, 636 F. Supp. 2d 995, 1001 (C.D. Cal. 2009).

|   |   |
|---|---|
| 1 | Here, Song asserts in conclusory fashion that the "aggregate amount of damages exceeds $5,000,000," Dkt. No. 13 at 3, but provides no evidence in her complaint that supports her claimed amount in controversy, *see generally id.* The amount in controversy attributable to Song alone appears to be relatively minimal. *See id.* at 6 (alleging $3.50 of direct damages due to the price difference of a 30-Roll Count of Charmin Ultra Soft Bath Tissue between the online and warehouse price), 13–14 (requesting among other things "actual and/or compensatory damages, treble damages, and punitive damages in an amount to be proven at trial," "attorneys' fees and costs, at the maximum rate allowed by law," and "injunctive and declaratory relief"). And while Song contends that she believes that the number of class members "are well into the thousands" and "can be determined through appropriate discovery," *id.* at 8, the Court notes that even claims of $15 in damages per person would require a nationwide class of over 100,000 individuals in order to satisfy CAFA's amount in controversy requirement. These assumptions of higher per individual direct damages amounts, as well as a plaintiff class numbering in the hundreds of thousands, are not supported by any allegations in the complaint. *See generally id.* Song therefore must demonstrate why she has a good faith belief that this action has an amount in controversy sufficient to invoke this Court's jurisdiction. *See Smith v. Kraft Foods, Inc.*, No. 07-cv-2192-BEN (WMC), 2008 WL 11337485, at *3 (S.D. Cal. Sept. 12, 2008) ("If it were enough to conclusively assert that the amount in controversy is met, without alleging any additional facts in support of actual damages, every purported class action would have to remain on the federal docket indefinitely. Certainly, this is not the result envisioned by the drafters of CAFA."); *see also, e.g., id.*; *Steen v. Am. Nat'l Ins. Co.*, No. 2:20-cv-11226-ODW (SKx), 2022 WL 19915548, at *2 (C.D. Cal. Feb. 9, 2022); *Jepson v. Ticor Title Ins. Co.*, No. C06-1723, 2007 WL 3171442, at *2 (W.D. Wash. Oct. 26, 2007). |

ORDER TO SHOW CAUSE - 6

## III.  CONCLUSION

For the foregoing reasons, the Court ORDERS Song to SHOW CAUSE within 21 days of this Order why her complaint should not be dismissed for lack of subject-matter jurisdiction. Failure to do so will result in dismissal without prejudice. *See* Fed. R. Civ. P. 12(h)(3).

Dated this 16th day of December, 2024.

Lauren King
United States District Judge

ORDER TO SHOW CAUSE - 7